Court is now in session. Good morning. The next case on our docket is Mitchell v. Bailey. Counsel for Mr. Mitchell. May it please the court. Stephen Laser appearing for Matthew Mitchell, the plaintiff, the appellant, and cross appellee. The district court ruled that Indian tribes enjoy sovereign immunity from suit with respect to their off-reservation tortious conduct. Neither the Supreme Court nor this court has ever held that. In addition, the district court ruled that the tribe have not waived this purported sovereign immunity with respect to its disaster relief activities in Wimberley, Texas, where it was acting as a federally deployed and federally funded AmeriCorps disaster response team. I want to address the primary issue of sovereign immunity and waiver, but before I do that, the tribe has alleged that the I feel that's been adequately briefed and thoroughly briefed, but I would like to make a couple of comments with respect to the tribe's allegation that it was acting as a deemed employee of the federal government and that it in its petition that the federal government be substituted as a defendant. And instead, the United States appeared and opposed that the court clearly had federal subject matter jurisdiction and pursuant to Osborne v. Haley, that the commencement of the case, and it included the state claims asserted by Matthew Mitchell, as well as the federal claims asserted by the tribe. The tribe alleged that the district court lacked diversity jurisdiction of Orca Bailey and supplemental jurisdiction of the tribe, and it alleged that its status as a stateless entity contaminated, if you will, the district court's diversity jurisdiction over Bailey, and therefore the district court was without supplemental jurisdiction or diversity jurisdiction. The arguments made by the tribe have been rejected by the Supreme Court and Exxon Mobil Corporations v. Alipata Services. In that case, the court pointed out that when you're looking at supplemental jurisdiction, the court's first task is to see if there is a claim, whether it's a diversity or or federal question claim that falls within the jurisdiction of the court. If there are other claims have been alleged that do not fall within the original jurisdiction of the court, the court said that that is of no moment. The initial determination is merely do we have jurisdiction under diversity? That is a mountain controversy and complete diversity as to one claim. The fact that we don't have it as other claims is of no moment. That case in the last two as to your federal question jurisdiction, are you arguing entirely Westfall Act for that? Or is there some other federal question? Judge Englehart, it's strictly the Westfall Act. The tribe alleged that they were deemed employees of the United States, asked for a certification that they were deemed employees and then petitioned the court to sub to substitute the United States. And under under Osborne versus Haley, that made the entire case a federal question case. If I've answered your question, quickly, the Westfall Act is the is the jurisdictional hook under federal question. Yes, Your Honor. All right, back back to the diversity issue. Um, in Exxon Mobil versus Al Apata Services, the court didn't focus solely on the amount of controversy issue, and that was that was a consolidation of a class action and an individual suit. The First Circuit 11th Circuit had disagreed on how to handle supplemental jurisdiction, and the court pointed out that the fact that there were cases where the amount controversy didn't meet the original jurisdictional amount for diversity was was irrelevant. If the court had diversity jurisdiction as to some of the claims, it could exert supplemental jurisdiction over the other claims, even though they didn't meet the amount of controversy. But the court went beyond that and talked about the complete diversity requirement, even though it wasn't an issue in the case. And the court pointed out for purposes of supplemental jurisdiction, the complete diversity requirement is not mandated by the Constitution or the plain text of Section 1332 A. And what the court said was, if the the real issue is as follows in a case with multiple plaintiffs and multiple defendants, the presence and the action of a single plaintiff from the same state as a single defendant deprives the District Court of original diversity jurisdiction. For supplemental jurisdiction, you don't look to 1332 A. 1, 2, or 3. You look to Strawbridge v. Curtis. If the entity you're trying to add as a supplemental party doesn't meet the original jurisdiction under 1331 A. 1, 2, or 3, that doesn't matter. The question is, is the entity you're adding a resident, a citizen of the same state as the plaintiff, and the tribe is not a citizen at all? And the operation of this can be seen in Newman Green, Inc. v. Alfonso Lorraine, one of the cases cited by the tribe. In that case, an Illinois corporation sued a Venezuelan corporation for breach of a licensing agreement, and it sued four Venezuelan citizens and an American citizen who resided in Venezuela, alleging that they had violated their guarantee of the royalty payments. The trouble, and this was one year before supplemental jurisdiction was enacted by Congress. It was in 1989. The problem with the American citizen, he had not resided in the United States in many years, had no in the United States, and therefore he was not a citizen of any state. That made him a spoiler as far as relying on diversity under Section 1332 A. 3. What the Sixth Circuit held was that didn't destroy the whole case. The plaintiff had the option to dismiss under Rule 21 that dispensable, nondiverse party and not destroy the whole diversity. And the case with the Supreme Court about whether the plaintiff had waived that right, and the court said no, that that right to dispense with a dispensable, nondiverse party can be raised by the plaintiff any time, including on appeal, which occurred here or even after judgment. But since we that was before supplemental jurisdiction, now with that American citizen who right and resided in Venezuela because he was a stateless individual and adding him under supplemental jurisdiction would not violate the complete diversity requirement as spelled out by the court in Exxon Mobil because he was not a citizen of Illinois. Moving on to the, if no more questions about federal subject matter jurisdiction, moving on to the issue of immune, sovereign immunity of tribes for off reservation tortious conduct. The Supreme Court in 1998 in the Akiowa case addressed for the first time whether tribes enjoy sovereign immunity for any of their off reservation activities. And the court pointed out prior to 1998 in the prior opinions, the court had looked at tribal sovereign immunity, recognized it almost as an afterthought. The prior cases had focused on the limited sovereignty tribes enjoy over their lands and peoples. The courts had postulated that the tribes also enjoyed sovereign immunity from suit with respect to activities on tribal lands. But in Akiowa, for the first time, the court was faced with the issue whether a breach of the promissory agreement was performable off reservation. The contract was with a non Indian entity. The tribe breached the promissory agreement, and the issue was whether the tribe could be sued for that breach of the promissory agreement. And for the first time, the court held that there was sovereign immunity for this. Now, the actual ruling of the court was very narrow. The court said tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or reservation. And that's page 761. Also, are there any instances that you can think of or that you've been able to find where Congress has placed limitations or abrogated sovereign immunity in terms of any statutory scheme that might be analogous? Not a total analogous, but in the Indian Regulatory Gambling Act, the Congress said that when states enter into gambling compacts with Indian tribes, the states can enforce those contracts in federal court against the tribe. They can uh, uh, Bay Mills Indian community. That issue came up. Uh, and, uh, perhaps I'll get to that a little later. But in answer your question, yes, Congress has acted in that one instance. In Kiowa, the court pointed out something very important on that issue. Judge Englehart. The court said the following. Although the court has taken the lead in drawing the bounds of tribal immunity, Congress, subject to constitutional limitations, can alter its limits through explicit legislation. So what the Kiowa court said that was important, there are bounds to tribal sovereign immunity. The Supreme Court has taken the lead in drawing those bounds, those boundaries, those limits. But Congress can step in subject to constitutional limitations and and either expand or contract what the Supreme Court has done. Uh, up until now, the Congress has not stepped in to change anything. The Supreme Court has done it in its drawing of boundaries of tribal sovereign immunity. What is your best case? Uh, Supreme Court or even a circuit opinion that supports the idea that we should, uh, take this opportunity to place a further limitation on sovereign immunity that matches this factual situation in the case that you spoke of, the tribe had agreed in his compact with Michigan. It would not open or operate casinos off of the reservation. And seven years after agreeing to do that, the tribe bought some land 125 miles from the from the reservation, undertook to build and operate a casino. Michigan, uh, filed suit in district federal district court to enjoin them. The district court allowed the injunction. The Court of Appeals reversed and said, you didn't include in your contract with the tribe that they waived sovereign immunity for off reservation gambling. They waived their sovereign immunity for on reservation gambling, and you could take them to court and enforce your regulations. But since you didn't do it, uh, you you can't regulate off reservation. Two members of the Kiowa court, Justice Scalia and Alito, reversed their prior position. They joined Justice Ginsburg and Justice Thomas and saying tribes should have no immunity for any off reservation activities. And they pointed out Justice Thomas and his dissenting opinion. If you allow off reservation immunity that can harm people who haven't chosen to deal with a tribe such as a tort victim, and you would leave him with no remedy. In footnote number eight, the majority in Bay Hill and Michigan versus Bay Mills said, We have never held that Indian tribes enjoy sovereign immunity from suit with respect to their off reservation towards in a follow up case. Upper Skagit Indian tribe versus, uh, land room. The Supreme Court for the first time had a case that didn't involve a beach of contact. It was where the tribe had bought some land off reservation and then challenged some adjoining landowner saying your fences in the wrong place. One acre of our land is on your property. We're gonna tear down your fence, clear cut that land and build a new fence. Well, that the, uh, Washington citizens, the land rooms took the tribe to court did quiet title to land saying our fences in the right location. The tribe took the position. We're immune from suit. You can't fight. You can't join us to a suit to quiet title. And the Supreme Court did not recognize that the tribe had sovereign immunity from suit as to that lawsuit. They sent the case back to the state of Washington and asked the Washington Supreme Court to determine for itself whether tribes enjoyed sovereign immunity from suit for a, uh, suit to quiet title as to land that was not on the tribe's reservation. Justice Roberts wrote a concurring opinion, referring back to and Justice Roberts said we can't have a situation where the tribes can go off reservation and do Willie whatever they choose, and there will be no remedy for their wrongs. It was just a concurring opinion. Thereafter, the Supreme Court of Alabama and Wilkes versus PCI Gaming Authority said we read footnote number eight of Kiowa to say the Supreme Court has not held tribes enjoy sovereign immunity from suit for their off reservation activities. Congress has not said they enjoy such sovereign immunity. And in in the in the Alabama case, a employee of the tribe had gone off reservation and, of course, the scope of his her employment had an accident eight miles from the tribe badly injured some Alabama citizens. The Alabama Supreme Court said those citizens could sue the tribe and its casino and its employee in Alabama State Court because the tribe didn't enjoy sovereign immunity. Uh, that I know we should never talk about, uh, denial of the search your are about Supreme Court. But the tribe took that case. The Wilkes versus PCI Gaming Authority case to the Supreme Court seeking search or there were a number of amicus briefs by various Indian tribes, Indian entities, including a group calling themselves the Indian Law Professors. And the Supreme Court asked the United States to step in and file an amicus brief since the United States has much contact with tribes through the Department of the Interior, through the Bureau of Indian Affairs and through the Department of Health and Human Services. Through the Indian Health Service, asked the United States to weigh in on whether the United States felt tribes should have immunity for off reservation towards. And, uh, despite the filing of all those amicus briefs, the Supreme Court didn't decide, did not grant cert, did not step in, did not reverse the Alabama Supreme Court. Mr. Laser, your time is expired. You've saved time for battle. Thank you, Your Honor. Miss Pollard, would you add two minutes to Mr Somerville's time? Mr Somerville. Good morning. May it please the court of Ayn Somerville for the Hoopa Valley tribe. This court should affirm dismissal of plaintiff's suit because there is no basis for federal court jurisdiction over any of his claims, which arise purely under state law. The federal diversity statute does not provide jurisdiction for any of plaintiff's claims because the requirement of complete diversity of citizenship is lacking due to the presence of the Hoopa Valley tribe in the suit. With no original jurisdiction, plaintiff also cannot rely on the supplemental jurisdiction statute to assert jurisdiction over Hoopa, nor is there any federal question jurisdiction over Mr Mitchell's purely state law tort or contract claims. Even if any jurisdictional basis did exist to proceed in federal court, the Hoopa Valley tribe has sovereign immunity from suit, which it has not waived. Regarding diversity jurisdiction, the Hoopa is not a citizen of any state for purposes of diversity. Every circuit court of appeal to address the issue has also agreed that Indian tribes are not citizens of states for purposes of diversity. Would there be diversity jurisdiction if the tribe were not named as a defendant? Absolutely. If this case just involved Mr Mitchell's suit against Oracle Bailey without the tribe involved, there's no question that there would be diversity jurisdiction. And so if we agree with you that there is no jurisdiction, the dismissal would be without prejudice. Is that correct? I think that's the argument that your opponent made in the reply memo. You agree with that? Well, I think in TTEA case that the Fifth Circuit addressed, in that case, the district court addressed sovereign immunity in that case and dismissed the case with prejudice based on sovereign immunity. And then later on appeal, the court affirmed in part on sovereign immunity and then separately addressed whether there was jurisdiction over the remaining equitable claims. And all this court did was simply affirm the district court's dismissal. But what I'm asking is, if there's no jurisdiction, we dismiss the case without prejudice and we don't get to sovereign immunity. Is that is that your understanding of where we are? I think that's right. The district court in this case chose to dismiss on the basis of sovereign immunity. But in this case, if we don't have jurisdiction to begin with, then there would be a dismissal before we got to sovereign immunity. That's correct. In our view, the order of analysis would be first the jurisdictional diversity or federal question supplemental. And then you proceed if you found you had jurisdiction to sovereign immunity. The reason why the lack of complete diversity in this case is important, even though Mr Mitchell did not assert diversity jurisdiction over Hoopa, is because Mr Mitchell claims that there is a basis for supplemental jurisdiction over Hoopa. But the lack of complete diversity forecloses any original jurisdiction, which is a requirement of the supplemental jurisdiction statute 28 U. S. C. 13 67 A. Without an original jurisdiction, there could be no claim of supplemental jurisdiction. And our position is that original jurisdiction was lacking due to the lack of complete diversity. Supreme Court cases such as Owen Equipment versus Kroger and the Exxon Mobile versus Alipata case confirm and make clear that a plaintiff cannot circumvent the complete diversity requirement by asserting a claim of supplemental jurisdiction over a nondiverse party. Section 13 67 maintains and confirms the complete diversity requirement by first requiring the existence of original jurisdiction in 13 67 A, which is precluded without having complete diversity in the case, and second, by expressly prohibiting a plaintiff from asserting claims that are inconsistent with diversity requirements in 13 67 B. So in in Exxon Mobile versus Alipata, that case only addressed the amount and controversy requirement and not the complete diversity requirement in terms of what the case was about. The court did on multiple occasions confirm that 13 67 still requires complete diversity of citizenship, and that its case was not stating that that requirement was no longer present. In fact, it expressly distinguished the amount and controversy requirement from the complete diversity requirement. It stated on multiple occasions that complete diversity or the lack thereof continues to contaminate all claims in the action which preclude original jurisdiction and was not being affected by their decision with regard to amount and controversy. So, for example, here, if Hoopa had been brought in, if this case only began as a case where Mr. Mitchell had sued Mr. Bailey and Hoopa had been brought in as a third party defendant by Mr. Bailey, Kroger and the Supreme Court's opinion in Kroger and its codification in 13 67 make clear that Mr. Mitchell could not have sued Hoopa under a claim of supplemental jurisdiction. That's what Kroger was exactly about. And the claim that Mr. Mitchell could not have sued Hoopa directly as a code defendant. It's clear that there has to be complete diversity of citizenship between all plaintiffs and all defendants. The plaintiff has the burden to establish federal court jurisdiction, and the plaintiff has failed to cite even one case that supports its claim that it can rely on the supplemental jurisdiction statute 13 67 to sue as a codefendant, a court defendant. Nor is there any federal question jurisdiction in this case. This case involved at the outset purely state law, tort and contract claims. There was no assertion of any federal claim in Mr. Mitchell's complaint. The assertion of federal question jurisdiction now relies solely on a defense that was raised in the litigation by the Hoopa Valley tribe, in which it claimed that the United States should be substituted under the Westfall Act as the proper defendant. Mr. Mitchell has relied on two cases to support his claim of federal question jurisdiction in this case. One was Lomano, which involved 28 USC 2679 D1. And that case was not a jurisdiction case at all, because there was no dispute that diversity of citizenship existed in that case. That attorney general certification under the Westfall Act was reviewable at all in federal court. But there was no dispute that diversity jurisdiction existed, and it's not a case that involves federal question jurisdiction or its basis. In Osborne versus Haley, that case involved 2679 D2, in which a case had originally been filed in state court. And then there was an affirmative attorney general certification and removal to federal court. And under the language of 2679 D2, an affirmative attorney general certification in state court under that section is conclusive for purposes of removal. So in Osborne versus Haley, despite the court's concerns with what would happen if substitution of the United States was actually ultimately denied, leaving just state law claims in federal court, the court interpreted 2679 D2 strictly under its terms by saying that Congress meant what it said was when a case is removed, based on an affirmative attorney general certification from state court, that affirmative certification is conclusive for purposes of removal, and the matter cannot be remanded back to state court even in the event that the United States is later found not to be the proper defendant. This case doesn't deal with any of those situations. In this case, there was a purely state law tort claim filed improperly in federal court. And then with no federal claims asserted in the complaint, later the tribe and Mr. Bailey raised the defense under the Westfall Act, which was vigorously disputed throughout the litigation by the plaintiff, and which was never addressed in any form by the district court, because the court found the issue moot after he dismissed the tribe and Mr. Bailey on the sovereign immunity arguments. So there's been no affirmative attorney general certification, there's been no addressing of the federal issues at all. And the mere, I mean, it's black letter law that the mere assertion of a federal defense does not provide federal question jurisdiction over purely state law claims. I mean, for that matter, the tribe's sovereign immunity defense is a defense that arises under federal law. But there's cases that hold and show that the mere existence of a sovereign immunity issue under federal law does not give a federal court jurisdiction to address what are otherwise purely state law claims. So this court may affirm dismissal of the plaintiff's suit on grounds of lack of jurisdiction without ever reaching the sovereign immunity issues. And as we discussed in our view, the proper order would be to determine whether the district court had federal court jurisdiction under any of diversity, supplemental, or federal question jurisdiction before addressing the sovereign immunity. Hoopa as a federally recognized Indian tribe is immune from plaintiff's suit for money damages. It is settled law that an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity. In a case involving tribal immunity, the baseline is tribal immunity with no exceptions. And the Bay Mills case, which plaintiff asserts is his best case for finding the inapplicability of immunity here, is a case that's six years old from the Supreme Court that strongly affirms sovereign immunity. The Supreme Court was presented with arguments by the state of Michigan that an Indian tribe should not be allowed to develop a casino outside of Indian lands in violation of federal law. And the state of Michigan argued that sovereign immunity should not be applicable, that the Supreme Court should find a waiver or a limitation on sovereign immunity. And the Supreme Court strongly affirmed that it had recognized and applied sovereign immunity on multiple occasions, not just in Kiowa. It said that Kiowa was not a one off. It said that sovereign immunity was settled law, both on and off reservation, and that it had been presented with multiple arguments over the years by people seeking to carve exceptions into it. And it had rejected those invitations every time. It has found and it stated in Bay Mills that Congress has plenary power over Indian tribes. Congress does have the authority to waive and to limit tribal sovereign immunity, which is different than state sovereign immunity. Tribes are subject to the will of Congress and can have their own immunity limited by Congress if Congress sees fit. And the Supreme Court found it inappropriate for it, let alone for, you know, circuit courts of appeal or district courts to carve judicially based or policy exceptions into the broad and all inclusive doctrine of tribal sovereign immunity. You know, the only reliance or nugget from Bay Mills that is relied on by plaintiff is footnote eight. And footnote eight actually confirms the Supreme Court's view that sovereign immunity in the normal situation as it is normally applied, would apply to tort suits. It simply said they had not specifically, you know, addressed a question as to whether or not it would consider a exception or limitation on sovereign immunity if presented with that case. But in the normal way, in the normal situation, applying sovereign immunity as it has been applied by the Supreme Court in every single case that has come before sovereign immunity would apply. So what would be the remedy for an off reservation? Let's say a tort, let's say an auto accident where one of the vehicles is driven by a member of the tribe and there's an attempt to find liability and some remedy or even in a contract action. I think the case that we talked about earlier involved an action to quiet title against either a tribe or a member of a tribe who owns property. What would be the remedy? Is there some access to another type of administrative court or to a tribal court or something like that? In some cases, Judge Englehart, tribes have waived their own immunity had they tribal tort codes and they sometimes do provide forms in tribal court for tort claims or other claims. But there are cases addressing your questions in the Supreme Court. Lewis v. Clark, a recent Supreme Court case, addressed a off reservation vehicle accident. And the court found that as with states and other sovereigns, the individual tortfeasor can be sued in his individual capacity without implicating sovereign immunity. So that is a remedy, even though it may not be the remedy that's most favored. You know, a tort victim is not guaranteed to have a defendant that has a lot of money that can pay. And it's not necessarily guaranteed that if you get in a vehicle accident, you won't be hit by someone that has a lot of money to pay. That's just not a relevant issue. The point is, there is an alternative remedy in the vehicle accident case you raised because the individual tortfeasor can be sued. And that's what happened here. The individual tortfeasor, Mr. Bailey, was sued. So this is not a case where there is no alternative remedy, let alone the fact that the tribes argued that the United States could have been sued in this case under the Federal Tort Claims Act. So that is a alternative remedy as well. This is not a case where there is no alternative remedy. Well, let me ask you along the same lines. Let me ask you, too. I'm not quite sure I followed your explanation in the brief regarding the insurance requirement under this program that the tribe engaged in. Apparently, there was some necessity, contractual necessity, that an insurance policy up to a certain amount be procured before they could participate. And I know in the in the in the brief you discussed the purpose of that insurance and why it didn't, at least in the context of the waiver issue, it wasn't a factor. So it but I didn't quite follow why this insurance policy would have been procured, but it was only for the benefit of protecting the tribe's assets. It seemed like that would be the case with any insurance. Isn't that correct? I think that is the case with any insurance. I think generally, when you get an insurance policy, you're wanting to protect the insured. That's why an insured gets an insurance policy against the liability asserted by a third party, though. Right. But in a normal case, just take a private person. The existence of an insurance policy doesn't mean that that individual has waived their jurisdictional defenses. It doesn't mean they're assuming that they will be liable as a matter of evidentiary law or rules. An insurance policy isn't relevant to determine whether a party is negligent. So the fact that a party has insurance, even in a normal context, not involving a an immune government, that's that's a separate question as to whether or not that insured party can be sued by an injured party to collect on that policy of insurance. So and then we take that analysis and apply it to what we have here. There's clear law that a a waiver of immunity has to be clear and expressed. Now, it doesn't have to say we are waiving our sovereign immunity. There's one case relied on by the plaintiff, which is C&L Enterprises, in which the Supreme Court found that when a tribe in a contract had agreed to binding arbitration, had agreed in contract terms to have that award enforced in court and judgment entered on it and consented to state jurisdiction, the Supreme Court said, hold on, you you've agreed to be held liable by the contracting party. There is nothing like that in this case. The contract that issue has no dispute resolution provisions at all. It has no arbitration. It has no consent to jurisdiction. It has nothing in it whatsoever that would indicate that the Hoopa Valley tribe consented to be sued by anyone at all. And is that policy contained? Is it does it cover the cost of defense as well? Does the policy cover? There's nothing in the contract. There's nothing in the contract that says anything about the cost of defense at all. And that's what the argument is that the language of the contract is what results in the waiver and the fact that there was provisions for insurance in the contract. And there's not anything in the contract that addresses that. And in our view, there's nothing in the contract itself that mandated the Hoopa Valley tribe to have a liability insurance policy at all. There was also the alternative to rely on workers' compensation provisions. But your question is. The tribe did obtain a policy, right? The tribe, the tribe had a liability insurance policy like like generally all tribes do. There's not evidence that shows that they. It covers the cost of defense. This is a friendly question. The tribe's policy, I assume, would cover the cost of defense in a tort action like this. And the honest answer is that I'm not sure exactly what the policy says about that, but I would assume that's generally the case as it is with most insurance policies. So you're not here being paid by the insurance company, you're being paid by the tribe. That's right. Okay. And part of that relates to I think there was a fairly large, you know, some self insurance provisions or retention in that policy. And again, I'm not. It's not exactly relevant to, in our view, to whether or not there's a waiver of immunity in this case, because there's whether or not they have insurance or not, there's no language in the contract or behavior on part of the Hoopa Valley tribe that shows they have been consented to be sued. And for, and in addition, in CNL Enterprises, the party that was invoking the waiver of immunity was a party to the contract. Here, Mr. Mitchell is not even a party to the contract and was found at the district court level to not be a third party beneficiary to the contract. So what you have is a party that's not even related to the contract at all that he's relying on to claim a waiver of immunity from suit to which he can benefit from. There is not one case anywhere, Supreme Court, Circuit Court, anywhere that has been aware of that has allowed a non-contracting party to benefit from an implicit, which is already disfavored, waiver of sovereign immunity from suit. There is no case cited in which a obtaining or contracting for an insurance policy has been found to be a waiver of immunity from suit. And all the cases that have addressed the issue go just the other way. And this is in the context of tribal governments. This is the context of state governments. The maintenance of insurance is just not enough to show that the sovereign entity, whether it's tribes or state, have waived their immunity from suit. So because there is no clear evidence or waiver on behalf of the Hoopa Valley Tribe, we submit that the tribe is immune, even if there is jurisdiction in this case, and that it has not been waived. Thank you. Thank you. Mr. Leiser? Circling back to this complete diversity requirement, the court must look at Exxon Mobil Corporations versus Alipata Services. The Supreme Court expressly said the complete diversity requirement when we're talking about supplemental jurisdiction looks solely at whether you have plaintiffs and defendants from the same state on opposite sides. When you have a stateless person, that does not violate Strawbridge versus Curtis. That's why we sued the tribe as a supplemental under supplemental jurisdiction. We knew the tribe was not a citizen of Texas. It's not a citizen of any state. It can be added under supplemental jurisdiction because it does not offend the complete diversity as expressly defined in Exxon Mobil versus Alipata when you're talking about supplemental jurisdiction. All of the tribe's cases were cases where people were relying solely on 1332 A1, 2, or 3 for jurisdiction over the stateless entity. Most of those cases were decided before supplemental jurisdiction came into existence. Now, on the federal question aspect, in the Osborne versus Haley, the plaintiff asserted in state court intentional tort claims. Every one of the claims was an intentional tort claim under state law. The attorney general stepped in and said the employee of the U.S. Forestry Service was acting in the course of discovery. His employment removed it. The reason the issue came up about what do we do if it gets the district court sent the case back, the Court of Appeals Sixth Circuit said you can't send it back because the attorney general is certified they were in the course and scope of employment. The attorney general admitted the only reason he did that was he didn't believe the plaintiff's allegations. And the court says, well, if the allegations are true, is he in the course and scope? And the attorney general said no. And so the issue became, can we send that case back because it's intentional torts? And the answer is no. Congress said in 1367 D2, you can't send it back. And the court said the only way that's constitutional is the entire case is a federal question case from the beginning. These state law intentional tort claims become federal claims. They arise out of the same dispute. And therefore, we're not offending Article 3 by saying the case can't be sent back. If this case gets sent back, what's going to happen is they'll raise their Westfall Act defense again. The case will come right back to federal court. We'll be right back where we are now. The Supreme Court in both those cases, in the in the Lomando case and in the the Osborne case, said this issue about scope of federal employment is an issue that should be determined in federal court. And the entire case, when it's raised by the defense, the entire case becomes a federal question case. Now, you ask about the contract between the tribes, just so when you ask about the tribes insurance policy, the insurance policy at $100,000 self-insured retention, the cost of defense would come out of that. There's a $10 million policy. Once the cost of defense is exhausted in that $100,000, then the the payments are coming out of the policy. I'm sure my good friend on the other side, they have gone way beyond the $100,000 self-insured retention and the insurance policy is paying for the defense of this case. The policy is written such that no payments can be made on behalf of Mr. Bailey. Mr. Bailey agrees to it. This insurance policy, the tribe has sole control over the purse strings. We we we have no remedy against Bailey because there will be no insurance coverage for Mr. Bailey because the tribe will not allow it to be paid. The policy provides it is governed by and interpreted according to the internal laws of the Hupa Valley tribe. So it's a different kind of policy. But the federal government required the tribe to have insurance to provide a remedy for the persons who are injured or damaged by their federal disaster relief deployments. And the tribe assured the United States they had the insurance policy. They gave the U.S. government proof that they had the policy and they became an AmeriCorps disaster response team. They have been terminated as AmeriCorps disaster response team because they haven't provided coverage for the injuries to Mr. Mitchell. They are no longer an AmeriCorps disaster response team. There is no doubt that insurance was not to protect the tribe. It was to protect the persons they would injure in the course of their deployments. I think I've used up my time, but thank you. Counsel, we appreciate your arguments today.